482 P.2d 448

**MOUNTAIN VIEW PIONEER HOSPITAL,**
an Arizona Corporation, Appellant,

**v.**

**EMPLOYMENT SECURITY COMMISSION**
of Arizona, Charles J. Minning, James A. Beaman and K. A. Phillips, Members of the Employment Security Commission of Arizona, Appellees.

Nos. 9850, 9851.

Supreme Court of Arizona,
In Banc.

March 15, 1971.

Gary K. Nelson, Atty. Gen., by James A. Tucker, Asst. Atty., Gen., Phoenix, for appellees.

Alan Philip Bayham and Max Klass, Phoenix, for appellant.

UDALL, Justice:

Mountain View Pioneer Hospital, plaintiff below in both cases, appeals from the orders of the Maricopa County Superior Court dismissing Mountain View's complaints on motion of the defendant, Employment Security Commission of Arizona. This Court has jurisdiction in this matter by virtue of A.R.S. § 23–682.

This is one of two cases which are being appealed simultaneously: (1) Mountain View Pioneer Hospital v. Employment Security Commission, et al., Case No. 209377, filed in the Superior Court on February 27, 1968; (2) Mountain View Pioneer Hospital v. Employment Security Commission, et al., Case No. 211888, filed in the Superior Court on May 10, 1968. Both cases involve the same parties, issues and almost identical facts.

"This is the second time *this case* appears before you. 1 CA-CIV 1022 is a *companion case*. The parties are the same. The subject matter is the same. The record in this case is slightly different." Appellant's Opening Brief at 2, Case No. 211888.

For this reason we have consolidated these two cases on appeal.

Mountain View instituted these two actions in an attempt to obtain a refund of approximately $9,000.00 in contributions made pursuant to an order of the Employment Security Commission, hereinafter referred to as the Commission. The Commission claims that Mountain View was not entitled to judicial review for the reason that it failed to follow the required statutory procedure of A.R.S. § 23–741. It also maintains that since the mandates of § 23–741 were not observed and all of Mountain View's administrative remedies were not exhausted, the superior court did not have jurisdiction in the matter. Mountain View, on the other hand, bases its appeal on the alleged grounds that the statutory procedure was followed. A.R.S. § 23–741 reads as follows:

"§ 23–741. *Payment of contribution under protest; petition for reduction of contribution; action to recover payment*

A. An employer aggrieved by a contribution required by this chapter shall

pay it before the delinquent date and shall at the same time give notice to the commission that all or part of the payment is made under protest. The notice shall be in writing, addressed to the commission stating the reasons for protest and that all or a portion of the payment is protested. Within ten days thereafter the employer may petition for a hearing, setting forth the reasons why the petition should be granted and the amount by which the contribution should be reduced. The commission shall grant the hearing, which shall be not later than twenty days after filing the petition, and shall notify the petitioner of the time and place thereof. After the hearing the commission shall make an appropriate order and shall furnish a copy thereof to the petitioner.

B. Within twenty days after entry of the order the petitioner may bring an action against the commission in the superior court, or in the United States district court when requisite jurisdiction exists, to recover the payment claimed invalid.

C. The procedure and the right of appeal from a judgment entered therein shall be subject to the rules applicable to civil actions, but no judgment for the refund of the contributions shall provide for interest thereon.

D. If final judgment is rendered in favor of the employer, the commission shall refund from the clearing account of the fund the amount found by the judgment to have been invalid or illegally collected."

The facts necessary for a determination of these two cases are as follows: Mountain View originally claimed exemption from payment of contributions under A.R.S. § 23-617, subsec. 10, as amended, as a nonprofit hospital operating exclusively for charitable purposes; the pertinent portion of which is as follows:

"10. *Service performed in the employ of a corporation,* community chest fund, or foundation, *organized and operated exclusively for* religious, *charitable,* scientific, testing for public safety, literary, or educational *purposes,* * *."

The record reveals the Commission had earlier advised Mountain View that it would not be entitled to exemption from contribution under the Act until such time as the Hospital's articles of incorporation were amended to specify that if dissolution should occur, its assets would then revert to some other charity. Such condition was complied with and Mountain View's attorney notified the Commission that on February 2, 1968 such amendment had been recorded with the Maricopa County Recorder's Office. On February 20, 1968 Mountain View was informed that it had been granted "exempt" status as of February 2, 1968. Rather than follow the statutory procedure of A.R.S. § 23-741, supra, Mountain View proceeded to file its first complaint with the Superior Court (Case No. 209377). On March 6, 1968 the Commission filed a motion to dismiss; which motion was granted on March 27, 1968, but not formally entered until December 3, 1968.

On April 2, 1968 Mountain View filed an "Application for Refund" with the Commission and on April 16, 1968 the Commission unanimously decided to deny Mountain View's request "for the reason they failed to comply with the administrative processes provided for in Sections * * * 23-741." Abstract of the Record at page 12.

With the first case still technically pending; since the formal order of dismissal had not yet been filed, Mountain View filed its second complaint with the superior court on May 10, 1968 (Case No. 211888). On June 3, 1968 the Commission filed another motion to dismiss on the grounds that "the Court does not have jurisdiction over the subject matter and for failure to state a claim upon which relief can be granted; and for the further reason that the matter is res judicata." The order granting dismissal of this second action was formally entered on

November 6, 1968. From these orders, granting the Commission's motions to dismiss, Mountain View appeals to this Court.

A.R.S. § 23–741 is crucial to a determination of the two cases; for it specifies the exact procedure to be taken in seeking judicial review of a payment made under protest. On appeal Mountain View claims that the "action seeking refund was instituted pursuant to and in accordance with Section 23–741 A.R.S." and that such procedures were complied with. We cannot agree. The record clearly shows that the statute's (§ 23–741) mandates were not followed. In appealing to the superior court *in both cases* Mountain View has totally ignored the statutory procedure for obtaining relief from an alleged "invalid and illegal" assessment

 Contributions made to the Employment Security Commission can be recovered by the employer under either of two statutes providing for refund of contributions in certain cases: (1) A.R.S. § 23–741=where contributions were initially claimed to be "illegal or invalid" prior to payment; (2) A.R.S. § 23–742=where contributions were "erroneously" paid or collected; as long as the contribution was *not protested or claimed to be invalid prior to payment* and application for refund was made within three years after the date on which any contribution or interest became due.

"§ 23–742. *Adjustment or refund of contribution; limitation*

A. Not later than three years after the date on which any contribution or interest thereon becomes due, an employer who has paid the contribution or interest may apply for an adjustment thereof in connection with subsequent contribution payments, or for a refund thereof in event the adjustment cannot be made. If the commission finds the contribution or interest, or any part thereof, was erroneously collected, it shall allow the employer to make an adjustment, without interest, in con-

nection with subsequent contribution payments, or if the adjustment cannot be made the commission shall refund the amount, without interest, from the fund into which payments were made. For like cause and within the same period, adjustment or refund may be made on the initiative of the commission."

This statute, in effect, provides that any adjustments or refunds of contributions are limited to the three year period of time immediately preceding the application for said adjustment or refund. This is a clear indication of the Legislature's intent to create a three-year statute of limitations with regard to any contributions "erroneously" paid or collected.

 An entirely different situation exists where contributions are claimed to be "*illegal or invalid*" *from the very beginning*: where protest accompanies or precedes payment § 23–741 provides a special and exclusive method for adjudicating the protestor's allegations and the statutory procedure for adjudication of such "illegal or invalid" contributions must be strictly complied with. That the Legislature recognized the distinction between contributions "erroneously" paid or collected and those "illegally or invalidly" collected is evidenced by these two separate and distinct statutes.

 In the instant case § 23–742 would definitely not apply since protest of the alleged "illegal and invalid" contribution was made prior to payment. The very first sentence of § 23–741 requires that the contribution be made "before the delinquent date" and be made under written protest. The Commission admits that while payment was made under a semblance of protest, it was not made prior to the delinquent date. Nor was written protest, stating the reasons therefor, given as required by § 23–741.

 The third sentence of § 23–741 states that "within ten days thereafter the employer may petition for a hearing." The word "thereafter" obviously refers to

the time that payment is made and the written notice of protest given; both of which are to be made simultaneously. Also, § 23–741 contemplates a hearing before the Commission, and an order issuing therefrom, as a pre-requisite to judicial review. Said statute, in the last sentence of subsection A, reads: "after the hearing the commission shall make an appropriate order * * *." Subsection B then states that "within twenty days after entry of the order the petitioner may bring an action against the commission in the superior court, * * *, to recover the payment claimed invalid." This procedure clearly was not complied with.

The main purpose in requiring an administrative hearing is to remove the onus of a great volume of complicated tax cases from unnecessary judicial review and to initially place them before a specialized tribunal trained to handle such matters. In State Tax Commission v. Superior Court, 104 Ariz. 166 at 169, 450 P.2d 103 at 106 (1969), we held that

> "* * * where taxes appear to have been imposed under semblance of authority and adequate remedies have been delineated in the taxing Statutes, the taxpayer must pursue such remedies to secure relief."

Here, Mountain View failed to pursue, or ignored, the statutory precedure for perfecting an appeal. When a party fails to exhaust all his administrative remedies he is thereby precluded from asserting his right to judicial review and the trial court is without jurisdiction to entertain such action. The doctrine of exhaustion of administrative remedies has been recognized and followed in Arizona. Campbell v. Chatwin, 102 Ariz. 251 at 257, 428 P.2d 108 at 114 (1967); see also Williams v. Bankers National Ins. Co., 80 Ariz. 294, 297 P.2d 344 (1956). The trial court did not have jurisdiction in the first case (Case No. 209377) since Mountain View had not timely followed statutory procedures. For this very same reason the trial court could not have had jurisdiction in the second case

(Case No. 211888). We, therefore, hold that the trial court properly dismissed both of these actions on the grounds that it was without jurisdiction.

STRUCKMEYER, C. J., and HAYS, V. C. J., LOCKWOOD and CAMERON, JJ., concur.